May it please the Court, I'm Thomas Mosley, counsel for the Petition Room on Oshinichawan. I'd like to reserve three minutes for rebuttal. What this Court has recognized as the severe penalty of lifetime banishment for conviction of an aggravated felony of necessity requires that the alien actually be convicted of the aggravated felony. In this case, we deal with the aggravated felony provision under Section 1018-43M1 of the Immigration and Nationality Act. Now, I think this Court made very clear panel decision in Alaca re-emphasizes this very fundamental point that an aggravated felony determination has to rest upon and be controlled by what the alien was found guilty of. And that's also the sound holding of persuasive authority from the Second Circuit, recent persuasive authority, in the Dallal case. Well, didn't we in Alaca really say that you can't base a loss on what he was not convicted of? I mean, Alaca was a very unusual fact pattern, with the conviction on one count and dismissed charges, where it was clear from what happened in the case that he was convicted of a lesser loss than was provided for in other relevant documents. How does Alaca really bear on this situation? Judge Rundell, I think Alaca is very persuasive authority that does bear on here because of the fundamental reasoning in Alaca that you have to, as Judge Ambrose said in the decision at page 108, this is predicated upon what the alien is found guilty of. In Alaca, there was a plea agreement to a specific amount that was part of the adjudication of guilt. And that's that fundamental principle. But Alaca also, I think, repeatedly emphasized that you cannot separate or you must be guided by the very fundamental principle that an aggravated felony as a basis for deportation requires that you be convicted of the aggravated felony. And in this case, certainly following the precepts in Dallal, in this case, in Mr. Nichallon's case, the jury was expressly and repeatedly charged that no loss finding was necessary. So in the fundamental adjudication of guilt that we have here, in the adjudication of guilt, there was absolutely no determination of loss. But aren't you ignoring, I mean, three or four Third Circuit cases, including Alaca, which even says that the record of conviction includes the indictment, plea, verdict, and sentence. That's right from Alaca, citing Singe and Nugent and it's the so-called modified categorical approach. Isn't this the very crime, the very section of the Immigration Act that Singe and those cases refer to? But Judge Arenas, I think what Singe does under those circumstances is says that we will go beyond the formal categorical approach, the formal categorical approach that says look only at the legal elements of the offense or the statutory definition in cases such as this where we're dealing with section 101A43M1. And under those circumstances, and under those circumstances, we would apply the modified categorical approach that the Supreme Court outlined in both Shepard and in Taylor, Shepard dealing with pleas, Taylor dealing with jury verdicts. And here, both of those, most recently in Shepard, talk about adjudication of guilt, the determination of where we depart from the statutory definition is in the adjudication of guilt. But we have not said that in either Alaca, Singe, or Monroe. Instead, we and Judge Becker in Singe talked about the fact that where the aggravated felony definition invites inquiry, we look at other aspects of the case. Not just, I mean, there's no, we don't have any opinions in our circuit. I mean, you can talk about the Second Circuit all you want, but we don't have any that we are confined to the guilt adjudication. In fact, in Alaca, Judge Ambrose talked about the court properly looking at the sentencing report. Let me ask you one question. Why are you not, is your case not problematic because of the stipulation to the loss in excess of $100,000? Isn't that a real problem for your clients? Well, again, Judge Rendell, that stipulation was not, first of all, in the context. That was a sentencing determination, a settlement, if you will, among all counsel, where if you look, for example, I believe at page 185 of the administrative record from that sentencing, not in the record, from that sentencing discussion, it's very clear that Criminal Defense Counsel at that point wanted to and did reserve the whole issue of whether there would be a loss properly determined, a loss properly determined for the purposes of- A joint and several liability. Well, but also, whether there would also be a, he reserved that issue, I submit, with respect to whether there would be a loss determination that would be controlling for immigration purposes, and that's also, I believe, at page 194. And what are you saying we can, that the court can look to, that the agency, the immigration judge can look to? I submit that under Shepard and under Taylor and certainly in light of Dallal, what you should look to is what was determined in the adjudication of guilt. Now, in most cases, that's relatively easy. The prudent prosecutor with a mind to limiting the burden of reviewing courts and generally speaking to avoiding problems with respect to sentencing generally on guilty pleas will specify an amount. Similarly, I would submit that the prudent prosecutor would ask for or should ask for a determination, which can be done again to avoid problems that may surface under Booker or Apprendi, would ask for the jury to be instructed to make a specific finding with respect to amount of loss so that we have, as I submit that both Shepard and Taylor requires, in the adjudication of guilt, in the adjudication of guilt, we have a determination as to loss. But Shepard and Taylor were criminal matters. This is, you're saying there needs to be an anticipation of a later immigration proceeding such that there should be a charge even though the charge is irrelevant to the criminal conviction? Well, it may very well be relevant to the criminal conviction in terms of sentencing, Judge Rendell. But no, what I am saying is that we start with the statutory scheme that Congress has enacted, which requires someone to be convicted of an aggravated felony. It's not enough that they be found to have committed this, that, or the other under lesser standards than proof beyond a reasonable doubt. Well, that's circular. I mean, the question is, what is an aggravated felony? But the fundamental precept, Judge Arenas, I submit, is that the aggravated felony is that the aggravated, the alien must be convicted of the aggravated felony. And conviction obviously means, as I submit, ALACA certainly held, that it's in the context of adjudication of guilt. And that's the requirement. I would also submit that certainly, given the construction of the statute that we have in Dallal, which is, I submit, persuasive in terms of saying that in the context of a guilty determination, you look only to what the jury was instructed to find. And here the jury was not instructed to find loss. But aren't you just ignoring ALACA and Judge Becker's opinion? No. I'm certainly not ignoring Judge Becker's opinion in Singh or, well, Judge Becker's language in Singh, admittedly, is dictis. And Singh dealt with a much narrower, Singh in his holding, dealt with a much narrower issue of whether the age of the victim, which was not an element of the offense, could be considered. So we should ignore it because it's dictis? No, no. I'm not saying that you should ignore it because it's dictis, Judge Arenas. But I'm saying that you should construe it in the context of, you should construe it in the context of the Singh and Judge Ambrose in, excuse me, in ALACA, where considering the modified categorical approach adopted from the criminal arena to be sure, but an approach that requires these determinations to be in the context of adjudication of guilt. What do you make of Judge Ambrose's language in talking about the modified categorical approach? The court has held that the record of conviction includes the indictment, plea, verdict, and sentence. Then he goes on to say, we may also consider any explicit factual findings by the trial judge. That's Judge Ambrose's relatively recent, post-Booker, I might add, decision. But I think it also has to be construed in the context of the language where Judge Ambrose repeatedly says that this has to be made in connection with the adjudication of guilt. It has to be made, and we cannot separate. That's the whole premise of Judge Ambrose's opinion, I submit, that you cannot separate the adjudication of, you cannot separate the aggravated felony definition from the fact that it requires conviction, as certainly as Dallal holds. You keep referring to M1. Actually, it's you that is the definition applied, because these were conspiracy counts. Count 30 and count 31 and 1. Count 1 and count 1 and count 30. Were conspiracy, which is under you. Correct. And it says the law and the language is the loss from the offense, the conspiracy offense. He was convicted of both conspiracies. There was a stipulation, which the trial judge, by the way, treated almost like a plea. He went through a colloquy that was, if you didn't know for a second, you'd think it was a plea colloquy. The way he did all the, when I was reading it, I said, is this a plea? I mean, but he did all those things, as trial judges, I do every week when I take pleas. You know, the voluntariness, the health of the person, does he understand it? Is he represented by counsel? Right, yes, Judge Arenas, but he specifically reserved on the issue with respect to whether this would be dispositive, I submit, in the immigration proceedings. And again, under the- He never mentioned the immigrant. On page 194 of the transcript, he says, Furlong, his lawyer, Jack Furlong says, that's the entire scheme issue, joint and several liability, that any defendant could be held in effect responsible for all other defendants. That's not a finding of over $10,000 specific to this defendant. Now, that's the language you're relying on. I'm also relying on 185, which says- Well, you cited in the brief this section. And also at 185, where he says, we're looking to reserve on the issue of dollar amounts for another day. Then I think that's right. Let me finish. Sorry, Your Honor. Do you agree with that, Mr. Prosecutor? Yes, I think it's right, Your Honor, just the loss. And then the court goes on to say, well, I'm going to use, for restitution, the global number for all the defendants. All the question that Furlong, I see what he was trying to do, but he just says, that's not a finding of over $10,000 specific to this defendant. Look, that's not the requirement of the immigration statute, that it has to be specific to this defendant. But I'm sorry, Your Honor. The conviction is conspiracy. The language is the loss from the offense, not the concept of specific to a defendant. I don't even know exactly what that means. But it has very little application in the conspiracy count. But this wasn't argued below as a conspiracy issue. And it was argued as an actual loss. But again, this was not a determination made in adjudication of guilt. I know that I'm out of time. If I can just make one last point, which is that given Dulal, we have a construction of the act that I submit is reasonable. And under the rule of lenity or narrow construction, the act should be construed, as Mr. Nichow and his urges it. And certainly, Dulal supports that. We'll rest on our brief for all the other points. Thank you. We'll hear from you on rebuttal. Counselor, I think we have the wrong name listed. Yes, Your Honor. It's Jamie Dowdell. Jamie? Yes. Thank you. Jamie Dowdell on behalf of the government. I just wanted to address a couple of the points that the court raised. Specifically, Judge Rendell properly points out that no case law from this circuit requires that a loss be tied to the criminal conviction. In fact, the cases cited by the court, Monroe and Singh, clearly say the opposite. Additionally, the Supreme Court's decision in Shepherd allows the court to look to the other documents noted as a record of conviction, including charging document, plea agreement, verdicts, judgments of convictions, records of sentences, and plea colloquies. Let's talk about that a little bit. Shepherd and Thomas arise in a different context, but I assume you will agree with me that our circuit has decided that their rationale is applicable to the situation that's currently before us. Yes, Your Honor. In Allocca specifically. Yes. Okay. But there are – and under the categorical approach of those cases, in most instances, you look only to the elements of the offense and you have no reference whatever to what happened, what the facts of this case were. Yes. But in Allocca, we said that this statute is one where that invites more extended inquiry so that you can look to the specific case and not just to the elements. Yes. And the issue before us is what the appropriate scope and limitations of that inquiry are. Now, isn't the whole basis of Thomas and Shepherd that you've got to look only to things that are essential to the conviction? Yes. Well, how is the amount of loss here essential to this conviction? I mean, there is a stipulation, of course, but the stipulation, as you know, it was a stipulation for sentencing purposes. And of course, that would include not just the convicted conduct, but related conduct as well. Yes. So how do we know that whatever monetary figure was stipulated to – all we know is a monetary figure was stipulated to for sentencing purposes, and we don't know how much of that amount was convicted conduct, do we? Well, Your Honor, I think there are two answers to your question. The first being I think what you were asking, the elements of the conviction. However, under this statute, 101-843-11 requires a $10,000 loss. Therefore, the court has to look to all of these documents to figure out whether it meets that qualification. But the second part of your question with regard to finding out what sort of loss was in this case, the judgment actually lists a total loss of over $683 million. Oh, wait a minute, wait a minute. You're talking about restitution? No, Your Honor. The judgment actually at the record, let's see, 277 through 81, lists total loss, not restitution ordered, which is the same amount, but actually lists total loss of $683,632,800.23. Which subsequently, the defendant was ordered to pay restitution in that same amount, but there's a separate heading in the judgment that says total loss. Okay, well, you're telling me something I had not focused on, but let's focus on restitution first. You would agree with me that like the stipulation for sentencing purposes, the amount determined for restitution purposes includes other things. Restitution, for example, is based on related conduct as well as committed conduct. I'm sorry, convicted conduct, I'm sorry. So it's like the stipulation, but you say there's an independent, aside from the stipulation and aside from the restitution, there was a finding here by the judge, and was there some basis for that other than the stipulation? Well, let's see. I was just going to point you to the specific page where it says, might be easier to find, which I can't seem to find right now. But next to the restitution order, there is a finding. Okay, here it is. The record at 281 says, if you look sort of the middle of the page, it says name of payee, see attached list, total loss, and it lists the 683 million. And then it says restitution order at 683 million. Well, that's just part of the standard language on the restitution page, isn't it? It's a JNC you have there. Correct, yes, it is. That's just the standard page of restitution. Well, the restitution is not always, definitely not equivalent to loss. Restitution can be much less based upon the ability to pay. It can include relevant conduct, correct? Correct. Although under Monroe, we have said that restitution order may be helpful, correct? Correct, yes. But if the court has a problem using that specific total loss, there's actually, in count one of the indictment actually describes, in describing the fraudulent scheme here, uses the language engaged in a fraudulent scheme to obtain hundreds of millions of dollars. But it doesn't say that that was obtained. It says scheme to obtain. To obtain, correct. And you could engage in a scheme to do that and come, you know, victims not part with anything. But he wasn't, he didn't plead guilty to that. He did not, but he was found guilty by a jury of count one of the indictment, which uses that. But they weren't asked to, it was not necessary to find an amount of loss and they didn't find it. They were instructed to the contrary. They were told they didn't have to find a loss, weren't they? Yeah, you're both, you're both correct in your statements. However, I guess what I'm trying to do is sort of build for the court here that there were more than one, there was more than one statement in the record here of loss. Can I ask, can I re-ask Judge Stapleton's question? Sure. Slightly different way to incorporate what Judge Rundell just said. Paragraph eight of the stipulation says because the loss from the offense exceeds 100 million dollars and then cites two-way guideline, how do we know that that amount does not include relevant conduct, which would be like in LACA, for instance, a dismissed count or some conduct that wasn't charged. How do we know that that doesn't include relevant conduct as defined somewhere in that calculation as well as conduct specifically charged in the indictment? I think that was the thrust of Judge Stapleton's question and also Judge Rundell's question. What is it in this whole phalanx of paper that tells us that without going into, going into the trial record and, you know, things like that, which even the modified categorical approach would not permit us to do? Well, Your Honor, I would say two things. Number one, it seems clear from the judgment here that the loss attributed to conviction under counts one and 30, which were on Nijawan's conviction, that there was a total loss of over 683 million dollars, which clearly is more than the 10,000 dollars required in the statute. However, I would say if the court is concerned with the language in the LACA, I would point to the fact that, number one, that was a plea agreement, as Judge Rundell pointed out earlier, in which the defendant pled specifically to a loss, I think it was over, a little over 4,000 dollars. And in Monroe, the court said, in sort of a different context, that where there's no to a lesser amount or that a district court found a lesser amount, that there was nothing to keep the court from finding that it was a loss exceeding 10,000 dollars. But relevant conduct doesn't have to include convicted conduct, does it? It doesn't, no. Let me ask you, let me ask you a question. We review the aggravated felony determination de novo, do we not? Yes, ma'am. Now, the service has the burden of proving deportability by clear and convincing evidence. Yes, ma'am. So that when we review de novo, we look and see whether there was clear and convincing exceeded 10,000 dollars, correct? Yes, ma'am. What is the clear and convincing evidence here to that effect? Well, I would point the court to, as I said, the judgment, which clearly states a total loss of over 683 million dollars. But what if, I mean, don't we have to look at the judgment and see what's behind it? Maybe the judge flipped a coin and said, you know, if it comes up heads, 683 million comes up tails, you know, get out of jail free. Don't we, if we're looking at this de novo, don't we go behind and look at the evidentiary basis? I mean, do we? Well, Your Honor, well, the court actually, yes, does look to the documents that have been deemed by this court and the Supreme Court to be appropriate record of conviction, which in this case would be the judgment and would be the indictment, which lists hundreds of millions of dollars and the, and we would submit the written stipulation in which Mr. Nijhawan stipulated the loss from the offense exceeded 100 million dollars. There's nothing on this record that would indicate in any way there was a loss here less than 10,000 dollars. It's clear that it was at least more than 100 million, if not up to 683 million. So there's no problem, as the court has faced before, with a loss somewhere between zero and 10,000 dollars. It's clear that it's well above 10,000 dollars, if not above hundreds of millions of dollars. So there's no problem here with regard to could he have been convicted of something that falls under the 10,000 dollar threshold. I would also like to point out that the offense, there's no specific loss that needs to be found with regard, as Mr. Mosley was arguing, that needs to be found with regard to the conviction. The INA clearly states, and this court has found, that the 10,000 dollar language is the qualifier. And as Judge... Would this be different if the provision said convicted of a 10,000 dollar fraud crime? Would it be different? It's possible, Your Honor. However, the language clearly indicates a fraud crime in which the loss of the victim exceeds 10,000 dollars. Convicted of an offense involving fraud or deceit in which the loss to the victim or victim is exceeded 10,000 dollars, correct? Correct. And as you previously pointed out, and as we pointed out in our brief, it would almost make that statutory provision 101-843-M obsolete if you were to require a 10,000 dollar, that loss be part of the criminal conviction because of the broad nature of federal and state fraud crimes. So it's clear that when Congress wrote the statute and used the 10,000 dollar language as a qualifier, it's sort of similar to using some of the language in other parts of the statute requiring a certain time in jail and things like that. So it's clear that it's not tied to the conviction, but it's sort of an extra... Well, I keep using the term qualifier, but sort of an extra step. So you have to have the fraud conviction, and then you look to see the loss. They don't have to be tied together. Is it significant that it wasn't a fraud conviction, but a conspiracy conviction? I mean, you can have a lot... A conspiracy is an agreement to engage in illegal conduct, and the agreement may involve... does not necessarily involve the total ultimate loss from the conduct. I mean, the total loss may be unknowable or wholly unforeseeable at the time the conspirators enter into their conspiracy agreement. They may have agreed to a minor, a lesser scope conspiracy than the facts turned out to be. It's possible, Your Honor. And I would say two things to that. Number one, the record of conviction here clearly indicates that this was a very broad conspiracy scheme to defraud several financial institutions, both nationally and internationally, of hundreds of millions of dollars. Number two, however, when you look at the language of the immigration statute in terms of conspiracy and how that relates to, I would say, the 101A43M, the language states a conspiracy under this paragraph. So then you would look to what portion of the paragraph the convicted party conspired to violate, which in this case is A43M, the fraud portion. So I don't think that the conspiracy part necessarily would require that the court look at this differently as if it were just an A43M conviction. I'd like to follow up. I'd like to go back to 1B1.3, the relevant conduct section of the guidelines. It says in application note two, because a count may be worded broadly and include the conduct of many participants over a period of time, the scope of the criminal activity jointly undertaken by the defendant is not necessarily the same as the scope of the entire conspiracy. It goes on to say, then, at the end, that the conduct of others that was both in further insolvency and reasonably foreseeable is relevant conduct. In other words, it says that just because you're in a conspiracy, this is what this section says, doesn't mean every conspirator has the same degree of criminal liability for that conduct. But under the relevant conduct provisions, they drag it all in. And again, how do we know that something that he's not criminally liable for is not becomes relevant conduct because this was a sentence done under the guidelines? Well, Your Honor, first, I would say I think it's a pretty standard provision under criminal law that a conspirator is responsible for the acts of – one conspirator is responsible for the acts involved in a conspiracy. However, if you look to the criminal documents here with regard to judgment of conviction, which was just Mr. Nijhawan's judgment of conviction, was not a judgment of conviction for all the conspirators, just Mr. Nijhawan, who was convicted by a jury of counts 1 and 30 of the indictment. And you look to the judgment here lists, number one, his conviction under both counts as described in the indictment. Number two, the total loss – just on his conviction document, the total loss was listed at over $683 million. And just his restitution order was listed as over $683 million. So I don't believe that the court needs to concern itself so much with the related conduct and things like that where you have a conviction document just relating to Mr. Nijhawan and not relating, you know, as some sort of community document or judgment of conviction that includes more than one of the conspirators. Thank you. Thank you very much. Just very briefly, first, I think particularly with what Judge Arena has questioned about the relevant conduct language in the sentencing guidelines make abundantly clear that you was actually a conviction both in terms of calculating loss and restitution. And that's clearly, I submit, what we have here. Secondly, with respect to the government's argument about qualifier, I think we have to parse the language very carefully here in light, again, of what Judge Ambrose said about not divorcing an aggravated felony determination from conviction. Section 101A43M says enough that when you read it in the context says the alien has to be convicted of an offense in which there is a loss that exceeds $10,000. That, by its plain language, I submit, means that the offense of conviction for which you're convicted in that offense, there has to be, in that conviction, there has to be a determination in the adjudication of guilt of $10,000. But isn't that, I find it a little problematic from a common sense standpoint. You know, the defense counsel says, your honor, please charge the jury that they must find in excess of, you know, $10,000. And the prosecutor says, wait a minute, I don't want that. What if they find it's less? I want him convicted of the fraud. It's not relevant. And if the judge charges it and it really isn't relevant, it's not relevant to the crime. So you're asking for the trial courts to make this an element and charge it when loss is routinely a matter for sentencing. And no prosecutor in their right mind is going to agree that this is something the jury needs to be charged. But in most cases, particularly with alien defendants for which a sentence of lifetime banishment is far greater or worse sentencing, it's negotiating and being able to negotiate with respect to establishing loss as part of the actual adjudication of guilt in a plea agreement that I submit is going to be a- Well, this wasn't a plea agreement. This was a jury trial. And why should the jury be asked to find something that is not an element of the crime, especially when that aspect, i.e. loss, is routinely, unless it is an element of the crime, and sometimes it is, loss is routinely a matter for sentencing. But here we deal with, I mean, in Congress conceivably could change section 101A43M1 to say that convicted of a defense in which restitution is ordered, in which restitution in an amount in excess of $10,000 is ordered. But that I submit is not what we have here. Congress created a statute in which it said, as I think Dalal very correctly holds, that in this context, you have to have a determination in the adjudication of guilt. In most instances, that's going to be part of a plea agreement, as in ALACA, where the amounts specifically stated. And finally, just again to emphasize or reemphasize the point, given Dalal, given the Second Circuit's decision and the rule of lenity, I submit the tie here should go in favor of Ms. Juneau-Challon. We'll rest. Thank you. Thank you, Counsel. The case was well argued. We'll take it under advisement and call our next case.